UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| **THIS DOCUMENT RELATES TO:** | JUDGE MILAZZO |
| SHIRLEY DIANE VELASQUEZ | MAG. JUDGE NORTH |
| Plaintiff, V. | COMPLAINT & JURY DEMAND |
| SANOFI S.A.; AVENTIS PHARMA S.A.; SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S.; | |

## SECOND AMENDED SHORT FORM COMPLAINT[1]

Plaintiff incorporates by reference the Second Amended Master Long Form Complaint and Jury Demand filed in the above referenced case on September 27, 2018 (MDL Doc. 4407), subject to the amendments set forth in paragraph 13 of this Amended Short Form Complaint. Pursuant to Pretrial Order No. 15, this Short Form Complaint adopts allegations and encompasses claims as set forth in the Second Amended Master Long Form Complaint against Defendant(s).

Plaintiff(s) further allege as follows:

1. Plaintiff:

    _Shirley Diane Velasquez_

---

[1] (Effective as of January 4, 2019) This version of the Short Form Complaint supersedes all prior versions of the form pursuant to Pretrial Order No. 73. This Court-approved version of the Short Form Complaint is available on the Court's Taxotere webpage and through MDL Centrality.

1

2. Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium):

   _____

3. Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

   _____

4. Current State of Residence: __Colorado_____

5. State in which Plaintiff(s) allege(s) injury: __Colorado_____

6. Defendants (check all Defendants against whom a Complaint is made):

   a. Taxotere Brand Name Defendants

      ☒ A. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.

      ☒ B. Sanofi-Aventis U.S. LLC

   b. Other Brand Name Drug Sponsors, Manufacturers, Distributors

      ☐ A. Sandoz Inc.

      ☐ B. Accord Healthcare, Inc.

      ☐ C. McKesson Corporation d/b/a McKesson Packaging

      ☐ D. Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc.

      ☐ E. Hospira, Inc.

      ☐ F. Sun Pharma Global FZE

      ☐ G. Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd.

      ☐ H. Pfizer Inc.

      ☐ I. Actavis LLC f/k/a Actavis Inc.

      ☐ J. Actavis Pharma, Inc.

      ☐ K. Other:

   _____

7. Basis for Jurisdiction:

   ☒ Diversity of Citizenship

2

☐ Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure:

8. Venue:

District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court:

US District Court of Colorado

9. Brand Product(s) used by Plaintiff (check applicable):

☒ A. Taxotere
☐ B. Docefrez
☐ C. Docetaxel Injection
☐ D. Docetaxel Injection Concentrate
☐ E. Unknown
☐ F. Other:

10. First date and last date of use (or approximate date range, if specific dates are unknown) for Products identified in question 9:

Started on or around 1/27/2011 and finished on or around 5/2/2011

11. State in which Product(s) identified in question 9 was/were administered:

Colorado

3

12. Nature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury:

> After concluding Taxotere administration on or around 5/11/2011 until currently, Shirley Velasquez began experiencing the failure of regrowth of her hair. Along with severe and personal injuries that are permanent and lasting in nature including economic and non-economic damages, harms and losses, including, but not limited to: past and future medical expenses; psychological counseling and therapy expense; past and future loss of earnings; past and future loss and impairment of earning capacity, permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; and past, present and future loss and impairment of the quality and enjoyment of life.

13. Counts in Master Complaint brought by Plaintiff(s):

    ☒ Count I – Strict Products Liability – Failure to Warn

    ☒ Count III – Negligence

    ☒ Count IV – Negligent Misrepresentation

    ☒ Count V – Fraudulent Misrepresentation

    ☒ Count VI – Fraudulent Concealment

    ☒ Count VII – Fraud and Deceit

    ☐ Other: Plaintiff(s) may assert the additional theories and/or State Causes of Action against Defendant(s) identified by selecting "Other" and setting forth such claims below. If Plaintiff(s) include additional theories of recovery, for example, Redhibition under Louisiana law or state consumer protection claims, the specific facts and allegations supporting additional theories must be pleaded by Plaintiff in sufficient detail as required by the applicable Federal Rules of Civil Procedure.

> **Plaintiff amends the below identified paragraphs in the Second Amended Master Complaint as follows:**
>
> **Replace paragraph 10 with the following:**
>
>    10.    Plaintiffs could not, by the exercise of reasonable diligence, have discovered that their usage of Taxotere, Docetaxel Injection, Docetaxel Injection

4

Concentrate, or Docefrez resulted in their injuries. In fact, Defendants have yet to acknowledge that these drugs permanently prevent hair regrowth, and Plaintiffs did not suspect, nor did they have reason to suspect that these drugs prevented hair regrowth or the tortious nature of the conduct causing their injuries until a date prior to the filing of these actions, which is less than the applicable limitations period for filing suit.

**After paragraph 124, add the following:**

124a. The label approved for Taxotere for this indication reflected the medical community's understanding that temporary hair loss is commonly associated with chemotherapy drugs and provided no information about the risk of permanent alopecia.

124b. In fact, the clinical trial sponsored by Sanofi to support initial approval did not evaluate alopecia as a long-term side-effect of Taxotere.

**Replace paragraph 136 with the following:**

136. Sanofi obtained FDA approval in May 2010 to add language related to pediatric safety and efficacy, including: "The overall safety profile of TAXOTERE in pediatric patients receiving monotherapy or TCF was consistent with the known safety profile for adults." Additional changes to this label included a number of edits described by Sanofi as "housekeeping" that, among other things, deleted the phrase "hair generally grows back" and added "most common side effects of TAXOTERE include: […] hair loss" to the "Patient Information" section of the label. As with previous labels, the May 2010 label provides no information about irreversible or permanent hair loss.

136a. On March 5, 2015, Sanofi conducted an audit of its U.S. product labels, finding that the U.S. label for Taxotere did not include the required safety information, including information about persisting alopecia. Sanofi determined this information

5

should have been added to the U.S. label in 2011.

136b.   Shortly thereafter, on March 23, 2015, FDA requested information from Sanofi regarding instances of permanent alopecia.  On April 8, 2015, Sanofi issued its response to FDA, identifying that out of 2118 cases of reported alopecia from Taxotere patients, 89 (4.2%) appeared to be permanent.

136c.   In response, FDA requested on October 5, 2015 that Sanofi provide any additional information on permanent or irreversible alopecia and amend the Taxotere label to identify permanent alopecia in the "Adverse Reactions" section of the label.

136d.   On November 11, 2015, Sanofi issued a Final Clinical Overview of Permanent Alopecia, finding a causal association between Taxotere and permanent alopecia. Sanofi then submitted a CBE sNDA on November 24, 2015 adding the language "cases of permanent alopecia have been reported" to the "Adverse Reactions" and "Patient Counseling Information" sections of the label. Sanofi also made changes to the "Patient Information" section of the label adding that the most common side effects of TAXOTERE include "hair loss: in most cases normal hair growth should return. In some cases (frequency not known) permanent hair loss has been observed." The FDA approved Sanofi's sNDA on December 11, 2015.

136e.   On April 11, 2018, Sanofi submitted a Prior Approval sNDA, request that the Taxotere label be updated to identify adverse events occurring at the conclusion of the follow-up period in TAX 316 in 2010.  Among the adverse events identified by Sanofi included 29 patients who had alopecia ongoing at a median follow-up of 10-years. FDA approved Sanofi's proposed label change on October 5, 2018.[2]

---

[2] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2018/020449Orig1s079ltr.pdf

**After header "III.   Defendants Knew That Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate May Cause Permanent Alopecia."**

148a.   In 1997, Sanofi initiated TAX 316, a self-sponsored clinical trial comparing the effects of a regimen of fluorouracil, doxorubicin, and cyclophosphamide ("FAC") with a regimen of docetaxel, doxorubicin, and cyclophosphamide ("TAC") in patients with operable node-positive breast cancer.  A total of 1040 patients from 112 centers participated in TAX 316 with 744 patients receiving TAC and 736 receiving FAC.  In 2004, an interim analysis of TAX 316's 55-month median follow-up data demonstrated that 3.2% of patients who took Taxotere had persistent alopecia.

**After paragraph 149, add the following:**

149a.   In March 2006, Sanofi's pharmacovigilance department received an inquiry from a physician about the reversibility of alopecia following Taxotere treatment, noting that a patient had been experiencing alopecia since 2004.  In response, Sanofi's Global Safety Officer for Taxotere internally acknowledged that cases of irreversible alopecia had occurred during Sanofi's clinical trials for Taxotere and that the medical literature might contain additional reports of irreversible alopecia.  Despite this, Sanofi's Global Safety Officer advised against doing a literature search on the topic of irreversible alopecia and Taxotere. In addition, Sanofi withheld this information from the Taxotere label and concealed it from the medical community and consumers, including Plaintiffs.

**After paragraph 152, add the following:**

152a.   By early 2010, Sanofi had received reports from hundreds of women describing their permanent hair loss following treatment with Taxotere. Despite this fact, Sanofi withheld this information from the label and concealed it from the medical

7

community and consumers, including Plaintiffs.

**After paragraph 157, add the following:**

157a.  Later in 2010, Sanofi completed its analysis of the ten-year follow-up results for TAX 316, the clinical trial used to support the adjuvant breast cancer indication. This analysis found that the number of women reporting persisting hair loss had increased from the 22 patients reported in 2004 to 29 patients out of the 687 patients tracked into follow-up.  This represented an increase in the incidence of persistent alopecia from approximately 3% to 4.2%. Sanofi had previously decided in 2009 not to update the U.S. label with the follow-up data from TAX 316.  Instead, Sanofi submitted to the FDA only the Final Clinical Study Report for TAX 316, which is over a thousand pages long, without submitting a labeling change.  In addition, Sanofi continued to conceal this information from the medical community and consumers, including Plaintiffs.

157b.  In March of 2011, the French Health Authorities responded to Sanofi's overview of persisting alopecia, concluding that patients and healthcare providers should be provided information about the risk of permanent alopecia given the serious psychological consequences of this adverse effect.

157c.  The following month, Sanofi's Compliance Department issued an internal audit of drug labeling for various drug products, including Taxotere, to evaluate the accuracy and completeness of the safety data presented in the drug labeling  For Taxotere, the audit revealed that the labeling failed to include the incidence rate of persistent alopecia from TAX 316. Sanofi did not add this information to the label until 2018.

157d.   In June of 2011, the European Medicines Agency adopted the consensus of the French Health Authorities regarding persistent alopecia, informing Sanofi that the label for Taxotere needed to be updated to inform patients of the risk of irreversible alopecia.  Sanofi updated the Taxotere label distributed in the European Union but did not update the label in the United States. Instead, Sanofi continued to conceal this information from the medical community and consumers in the United States, including Plaintiffs.

**Replace paragraph 181 with the following:**

181.   There is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient, including among Plaintiffs. The scientific literature has variously referred to Permanent Chemotherapy Induced Alopecia as occurring between twelve to twenty-four months following chemotherapy treatment. Some literature has indicated that hair loss can be deemed "persistent" six months beyond the completion of chemotherapy.

181a.   Sanofi has stated in court filings that "persistent" alopecia generally describes hair loss for some duration of time following chemotherapy (e.g., 3 days, 30 days, 3 months, 6 months, etc.) and carries with it the potential for hair regrowth to occur.

181b.   Sanofi has also stated in court filings that "irreversible" or "permanent" alopecia, at a basic level means that an individual's hair will never regrow.

181c.   Before this litigation and after, Sanofi has described Permanent Chemotherapy Induced Alopecia in a number of different ways. Employees of Sanofi have testified that permanent hair loss does not necessarily mean hair loss of six months. In 2010, Sanofi's Global Safety Officer concluded it was reasonable to assume that

chemotherapy induced alopecia is "permanent" if alopecia persists for longer than four years following chemotherapy treatment. Consistent with that conclusion, in August of 2018, Sanofi's Global Safety Officer stated that it is reasonable to consider alopecia to be permanent if hair has not regrown for four years after chemotherapy. Nevertheless, in 2015, Sanofi's Global Safety Officer utilized a two-year cut off for deciding that chemotherapy induced alopecia is "permanent." Internal email correspondence indicates that the company chose a two-year cut off in order to underreport to the FDA the incidence of permanent hair loss.

181d. Upon information and belief, the varying definitions of Permanent Chemotherapy Induced Alopecia, as described above, were not reasonably knowable to prescribers or consumers of Taxotere, including Plaintiffs.

**After paragraph 213, add the following:** [If you are only naming 505(b)(2) defendants, do not include this addition which pertains only to Sanofi]

### A. Sanofi Actively Sought to Hide that Taxotere Could Cause Permanent Hair Loss

213a. Sanofi's marketing efforts also affirmatively sought to minimize any association between Taxotere and permanent alopecia.

213b. According to Sanofi's Global Safety Officer for Taxotere, Sanofi knew that Taxotere could cause permanent hair loss in 2006. Despite this, Sanofi created and published in 2006 an information brochure for oncology nurses that described alopecia as "a common, yet temporary, side effect of some cancer medicines" and provided no information regarding the risk of permanent alopecia associated with Taxotere.

213c. In addition, in 2010, Sanofi began proactively removing any comments about permanent alopecia from its Facebook page titled "Voices," which Sanofi

sponsored for the alleged purpose of "mak[ing] Voices heard throughout the community on issues of importance to patients…"

213d.  Sanofi began this practice after it observed posts from women about permanent alopecia following a March 5, 2010 article in the Globe and Mail, which described instances of permanent hair loss among Taxotere patients. In response, Sanofi's communications department formed a Rapid Response Team, and among its responsibilities included monitoring Sanofi's Voices Facebook page at all times to remove any posts about Taxotere and permanent hair loss.

213e.  Sanofi shortly thereafter hired an outside company, InTouch Solutions, to conduct this around-the-clock monitoring of its Facebook page.  At Sanofi's direction, InTouch logged and removed posts about permanent hair loss, blocked the user posting about it, and reported the user to Facebook to have her banned from the platform.

213f.  For example, one Facebook user posted on Sanofi's page the following: "When will you inform oncologists that there is a problem with your chemo drug, Taxotere?  Why don't you want women to know they could be left permanently disfigured?  Because they will choose a different drug not made by you.  The net is closing in on you, Sanofi."  At Sanofi's direction, InTouch Solutions removed the post within an hour, blocked the user from posting on the page, and reported the user to Facebook.

213g.  Another user posted, "My medical team have spoken to you, and therefore I have been informed that YOUR DRUG Taxotere has done this to me.  Why do you ignore me and REFUSE to contact me?  Why don't you explain to me why your drug Taxotere has permanently disfigured me and hundreds of others?"  InTouch

11

Solutions removed the post within an hour and reported the user to Facebook. The same user posted 28 more times, and at Sanofi's direction, InTouch Solutions removed the post from Facebook and had the woman permanently banned from the page.

213h. A different user posted "I did say I wouldn't stop until there was global publicity. You can't shut up women that you disfigure." Her post was removed by InTouch Solutions within an hour.

213i. After successfully scrubbing mention of permanent hair loss from Sanofi's Voices Facebook page, InTouch Solutions created a presentation to market its services to other drug companies, and it used the "crisis management" services it provided to Sanofi as a case study of what it could accomplish for its clients.

213j. As a result of Sanofi's fraudulent concealment of the association between Taxotere and Permanent Chemotherapy Induced Alopecia, the medical community and patients, including Plaintiffs, were deprived of adequate information about the drug. Consequently, Plaintiffs were unaware of the connection between their use of Taxotere and their injury of permanent hair loss.

**Plaintiff adds the following additional "Other" Counts:**

### Inadequate Warning Under LSA-RS 9:2800.57

1. Plaintiff repeats, reiterates, and re-alleges all paragraphs of the Master Long Form Complaint, with the same force and effect as if fully set forth herein.

2. Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced

12

TAXOTERE® into the stream of commerce, and in the course of same, directly advertised or marketed TAXOTERE® to consumers or persons responsible for consumers, and therefore, had a duty to both Plaintiff directly and her physicians to warn of risks associated with the use of the product, including, but not limited to, permanent disfiguring alopecia.

3. Defendants had/have a duty to warn of adverse drug reactions, including, but not limited to, permanent disfiguring alopecia, which they knew or should have known can be caused by the use of TAXOTERE® and/or are associated with the use of TAXOTERE®.

4. The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects, including, but not limited to, permanent disfiguring alopecia, associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

5. Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, although Defendants aggressively and fraudulently promoted the product to physicians.

6. Due to the inadequate warning regarding the serious risk for disfiguring permanent alopecia, TAXOTERE® was in a defective condition and unreasonably dangerous at the time that it left the control of Defendants.

13

7. Defendants' failure to adequately warn Plaintiff and her prescribing physicians of the serious risk of disfiguring permanent alopecia prevented Plaintiff's prescribing physicians and Plaintiff herself from correctly and fully evaluating the risks and benefits of TAXOTERE®.

8. Had Plaintiff been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff would not have taken TAXOTERE®.

9. Upon information and belief, had Plaintiff's prescribing physicians been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff's physicians would have discussed the risks of disfiguring permanent alopecia with Plaintiff and/or would not have prescribed it.

10. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiff suffered disfiguring permanent alopecia.

11. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

14. Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es) and Mailing Address(es) representing Plaintiff(s):

By: *(signature)*
Russell T. Abney
Georgia Bar No. 000875
**FERRER POIROT WANSBROUGH**
**FELLER DANIEL ABNEY & LINVILLE**
2100 RiverEdge Pkwy NW, Suite 1025
Atlanta, GA 30328
Telephone:  (800) 661-8210
Facsimile:  (707) 313-0956
atlanta@lawyerworks.com

15